# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.** 22-mj-8078-RMM

UNITED STATES OF AMERICA

v.

KEVIN C. FUSCO,

Defendant.
_____/

FILED BY_____ SP _____D.C.

**Mar 9, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?     ___ Yes  ✔ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     ___ Yes  ✔ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     ___ Yes  ✔ No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____

DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.   0592501
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:     305-905-7509
Fax:     561-820-8777
Email:   daniel.funk@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  22-mj-8078-RMM |
| KEVIN C. FUSCO | ) |
| | ) |
| | ) |

*Defendant(s)*

FILED BY _____ SP _____ D.C.

**Mar 9, 2022**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 16, 2021 until March 3, 2022   in the county of   Palm Beach   in the

Southern   District of   Florida   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§  841(a)(1), 846, and 841(b)(1)(A)(viii) | Conspiracy to distribute 50 grams or more of methamphetamine |
| 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(B)(vi) | Conspiracy to distribute 40 grams or more of fentanyl |
| 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii) | Possession with intent to distribute 50 grams or more of methamphetamine |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Arturo Calderon
*Printed name and title*

Sworn to me via Telephone-FaceTime
by the applicant in accordance with the
requirements of Fed. R. Crim. P. 4.1.

Date:   3/9/22   4:10 PM

_____
*Judge's signature*

City and state:   West Palm Beach, FL   Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR CRIMINAL COMPLAINT

I, Arturo Calderon, being first duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I have been so employed since April 2008. I am currently assigned to the Safe Streets Task Force Squad of the West Palm Beach Resident Agency. I have primarily been assigned to the investigation of gangs, drug trafficking, violent crimes, organized criminal enterprises, and bank robberies. I have been instructed in investigative techniques concerning drug trafficking offenses, to include dark web narcotics violations, amongst other federal violations. Prior to joining the FBI, I was employed as a Federal Air Marshal, and as a U.S. Immigration Inspector with the U.S. Immigration and Naturalization Service before joining the Federal Air Marshals. I have investigated and gained convictions against multiple drug traffickers engaged in the interstate smuggling and sale of narcotics both using the Dark Web, postal system, and other means of distribution, supply, and transport. I have attended conferences to receive training specific to Dark Web narcotics trafficking and other internet platforms used for illicit activities. Through my training and experience I have familiarity with investigations involving the use of computers, mobile devices, and associated software applications in furtherance of drug smuggling and other illicit activities. Such experience and training extends to investigations covering the use of The Onion Router, Virtual Private Network services, and encrypted software services used by drug traffickers to conceal their activity from law enforcement. Accordingly, I have worked numerous cases involving violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 843(b).

1

2.      This affidavit is made in support of a criminal complaint charging KEVIN
CHRISTIAN FUSCO, a/k/a "Syntropy," with conspiracy to distribute 50 grams of more of
methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(A)(viii), conspiracy
to distribute 40 grams of more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846 and
841(b)(1)(B)(vi), and possession with intent to distribute 50 grams or more of methamphetamine, in
violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii).

## PROBABLE CAUSE

3.      This application stems from an ongoing criminal investigation into illegal narcotics
dealers operating on criminal online marketplace websites, including Dark0de Marketplace, White
House Marketplace, and World Marketplace.  During this investigation, I have learned that there
are many criminal marketplaces accessible through The Onion Router ("Tor") network on the "Dark
Web."  Dark0de Marketplace, White House Marketplace, and World Marketplace are designed to
promote the anonymous sale of illegal items, such as narcotics, in exchange for Bitcoin and other
peer-to-peer cryptocurrencies (also known as "virtual currencies"). These Dark Web drug
marketplaces are made up of vendor profiles akin to those profiles or "shops" seen on websites such
as Ebay.com.  Each vendor profile can offer a selection of products to sell.  These products are
generally different quantities of narcotics offered for sale.  This complaint concerns the operation
of narcotics vendor profile "Syntropy" (Kevin FUSCO) on Dark0de Marketplace, White House
Marketplace, and World Marketplace Dark Web drug markets.

### A.  Background on the Tor Network and the Dark Web

4.      The Internet is a global network of computers and other devices.  Devices directly
connected to the Internet are identified by their unique IP address.  An IP address is used to route
information between devices.  Generally, when one device contacts a second device, the first device

2

must be directed to the IP address of the second device.  Moreover, when the first device contacts the second device, the first device provides its own IP address to the second device, so that the second device knows where to direct its response.  Accordingly, the two connected devices (for instance, a home computer and the www.google.com website server) know each other's IP address.

5.      The typical user may not know the IP address of a website visited.  Typically, a user will type the domain name of the website—which commonly corresponds to a plain-language name for the website, *e.g.,* www.google.com—into the Uniform Resource Locator ("URL") bar at the top of their web browser. This domain name will be transmitted to a Domain Name System ("DNS") server, which then translates the domain name into the appropriate numerical IP address, and thereby allows the user to connect with the requested website.  Conversely, if a user knows of a unique IP address for a particular website, generally[1] the user can type that IP address directly into the URL bar and access the website in that manner.

6.      In addition, publicly available databases can be easily searched to obtain the IP address for any known URL and the registered owner and location of any IP address. Thus, with additional inquiry, most any URL or IP address can be traced to its owner and physical location.[2] This is problematic for anyone conducting criminal activity on the internet and wishing to remain anonymous.

---

[1] The server or virtual server with a particular IP address can host multiple websites, in which case entering that particular IP address would not direct a user to a single website. However, if an IP address is associated with a single website, entering the IP address as described above would direct the user to that particular website.

[2] Private individuals operating home computers usually do not own and register their own IP address; instead, they subscribe to broadband accounts with ISPs, such as Comcast or AT&T, which in turn assign or lease an IP address to them (the subscriber). Nevertheless, the IP address can usually be traced to its assigned user at a given point in time using the ISPs' records of which subscriber was assigned which IP address and when.

### B. User Anonymity Provided by the Tor Network

7.      The Onion Router (Tor) network is a special network of computers, distributed around the world, designed to conceal the true IP addresses of the users of the network.  Every communication sent through Tor is directed through numerous relays within the network—and wrapped in a layer of encryption at each relay—such that the end recipient of the communication has no way of tracing the communication back to its true originating IP address.

8.      To access the Tor network, anyone can simply download the Tor browser software and use it to access the internet. The user simply inputs a website IP address or URL into the Tor browser, and the Tor browser automatically encrypts and routes the communication through several relays and then out to the destination so that the destination website can only see the IP address of the last (or "exit") relay and not the IP address of the device actually connecting to the destination website.

9.      By way of illustration, in a standard internet communication, when a person connects to a website, that website can see that person's IP address:



In this illustration of a standard internet connection, the website www.google.com can see the home computer IP address (123.456.789) and, of course, the user of the home computer knew the URL, and therefore the IP address, of www.google.com, which the user had to type into his browser to connect to the website in the first place.  Thus, each user's IP address is known to the other, and the owner and location of both can later be traced.  Similarly, any person monitoring the internet traffic at a point between the two IP addresses, would see the connection between IP

address 123.456.786 and www.google.com, and know that those two devices were communicating.

10.    On the other hand, in the case of a Tor network communication, when a person connects to a website, the traffic is encrypted and routed through multiple relays, and that website cannot see that person's IP address:



In this illustration of a Tor network connection, the website www.google.com *cannot* see the home computer IP address (123.456.789); instead, it only sees the IP address of the device it is directly connected to, in this case, the third (or "exit") Tor relay, with IP address 003.003.003, which cannot be traced back to the home computer user.  In addition, any person monitoring the internet traffic at a point between the home computer and www.google.com would *not* know that those two devices were communicating.  Instead, depending on the monitoring point, that person would only see the direct connections between the home computer and first (or "entry") Tor relay, between the first and second, or second and third Tor relays, or between the third (or "exit") Tor relay and www.google.com.

11.    As with a standard internet connection, the user must have known the URL or IP address of the website in order to have directed a connection to it through the Tor network. Accordingly, although the IP address of the user is hidden from the website, the IP address of the website must be known to the user—the anonymity is only one-way.  The Tor network addresses this one-way anonymity through a feature known as "hidden services."

### C.  Hidden Services: Website Anonymity Provided by the Tor Network

12.     To achieve true, two-way anonymity, the Tor network also enables websites to operate inside the network in a manner that conceals the true IP address of the computer server hosting the website.  Such "hidden services" operating on Tor have complex web addresses, generated in a computer algorithm, ending in ".onion."  Unlike a standard URL, there is no way to retrieve a website server's true IP address from its .onion Tor address alone.  This alleviates the need for a Tor network user to know the true IP address of a website.  Rather the user can direct his/her Tor browser to the .onion address, reach the website, and neither the user nor the website knows the other's IP address—two-way anonymity is achieved.  This network of anonymous users and websites is the Dark Web.

13.     Criminals have taken advantage of the Dark Web to create websites with online marketplaces dedicated to the trafficking of controlled substances and other illicit goods. Websites such as www.deepdotweb.com maintain an overview of illegal marketplaces operating on the Dark Web, and how-to guides such as: "How to Buy Drugs Online from Darknet Markets."[3]

### D.  Description of Involved Marketplaces

14.     Dark0de Marketplace, White House Marketplace, and World Marketplace function as intermediaries between buyers and sellers. Sellers create accounts in these marketplaces to advertise their products, such as narcotics or hacked computer passwords, and buyers create accounts to browse sellers' products and purchase them; in this regard, the marketplace website interfaces are similar to well-known, legitimate online marketplaces.

15.     Dark0de Marketplace, White House Marketplace, and World Marketplace perform moderator and maintenance services, such as receiving complaints, providing technical assistance,

---

[3] https://www.deepdotweb.com/2015/12/30/buy-drugs-online-from-darknetmarkets/

and allowing customers to post reviews of their vendors.  The marketplace also provides a means by which its users can communicate with its administrators and operators.  These marketplaces also charge a commission from every transaction as a percentage of the sale price.

16.     However, unlike legitimate online marketplaces, Dark0de Marketplace, White House Marketplace, and World Marketplace are dedicated and designed to facilitate the sale of illegalities, such as illegal narcotics and drug paraphernalia. Illegal drugs, such as methamphetamines, heroin, and cocaine, are openly advertised and sold and are immediately and prominently visible on the websites.  The websites are specifically designed to facilitate illegal commerce by working to ensure the anonymity of its administrators, as well as of the buyers and sellers who participate in commerce on the website. The websites are designed to achieve this anonymity primarily by operating as a hidden service on the Tor network.  To further promote anonymity, purchases are made primarily in Bitcoin (or other virtual currency) using the websites' escrow services.

### E. Use of Pretty Good Privacy (PGP) keys to encrypt messages

17.     To encrypt messages and add anonymity, a marketplace user can use Pretty Good Privacy (PGP), an encryption system used for both sending and receiving encrypted messages and sensitive files. Using this encryption system, users can generate a public and a private key, which are mathematically related and used for encrypting and decrypting messages. Each key is a digital signature, a small file with a stream of uniquely generated characters. Each person using PGP has both a public key and a private key. The public key is disclosed/distributed to be used in encrypting a message/file for the corresponding private key holder, while the private key is kept secret to only be used by the message recipient to decrypt the message/file. A PGP encrypted message/file is

scrambled in a complex way to make it unreadable to anyone other than the intended recipient, who holds the corresponding private key.

### SYNTROPY INVESTIGATION

**F. Subject Parcel A**

18.　　On July 16, 2021, a United States Postal Inspector located in Seattle, Washington, conducted an undercover purchase of one gram of cocaine from vendor "Syntropy" on the Dark0de Marketplace in exchange for cryptocurrency.[4]

19.　　On or about July 23, 2021, a parcel arrived at the address the Inspector provided to "Syntropy." Inside the parcel was a silver mylar bag containing a white powdery substance in a plastic baggie (see Figure 1). The substance weighed approximately 1.7 grams and returned a field test result for the presence of cocaine (hereinafter "Subject Parcel A").  The sender address on Subject Parcel A was as follows: ECM PARTS REPLACEMENT


*Figure 1*

LLC., 5500 MILITARY TRAIL #22, JUPITER FL 33458. The parcel was first scanned at the Summit Boulevard Post Office in West Palm Beach, meaning it was mailed from the Summit Boulevard address. A review of commercial databases revealed the 5500 MILITARY TRAIL #22 address was the address to a UPS store. The search yielded no results for ECM PARTS REPLACEMENT LLC in Jupiter, Florida.

---

[4] During this investigation, Agents compared the public keys (PGP keys described above) used by "Syntropy" within the different marketplaces and discovered the same public key was utilized by "Syntropy" for communication in the Dark0de Marketplace, White House Marketplace, and World Marketplace. A PGP encrypted message/file, encrypted by the same public key, is scrambled in a complex way to make it unreadable to anyone other than the intended recipient, who holds the corresponding private key, which in this case is user Syntropy.

**G.  Subject Parcel B**

20.     On August 3, 2021, an FBI Online Covert Employee (OCE) conducted a cocaine buy from username "Syntropy" on the White House Marketplace which revealed the characteristics of his parcels. The order was delivered on August 11, 2021, and the contents tested positive for cocaine. The parcel (hereinafter "Subject Parcel B") had a fictitious business sender address of Trifecta Consulting, 6671 W Indiantown Rd Ste 50, Jupiter, FL 33458, and was mailed out of the Summit Boulevard Post Office in West Palm Beach according to United States Postal Service (USPS) records.

21.     USPIS inspectors seized Subject Parcel B and opened it in conjunction with investigative partners.  Within it, investigators found a silver mylar bag containing approximately 4.5 grams of a white powdery substance that field tested positive for cocaine (see Figure 2). A subsequent lab test returned a reported result of cocaine.



*Figure 2*

22.     A review of commercial databases revealed the 6671 W Indiantown Rd Ste 50, Jupiter, FL 33458, was the address to a UPS store. The search yielded no results for Trifecta Consulting in Jupiter, Florida.

**H.  Subject Parcel C and Identification of "Syntropy"**

23.     A USPIS agent compiled a list of parcels sent using fictitious business addresses where the parcel was sent from a Post Office outside the vicinity of the reported fictitious business address. The list revealed a large number of parcels with fictitious business addresses being sent from Post Office locations in the Town of Palm Beach.

24.     On January 18, 2022, the OCE purchased seven (7) grams of crystal methamphetamine from username "Syntropy" on a dark web marketplace Dark0de (**hereinafter**

**"Subject Parcel C"**) to be shipped to a specific undercover address (hereinafter UC ADDRESS). User "Syntropy" accepted the order on January 19.

25.     On or about January 18, 2022, an agent with the USPIS advised a Town of Palm Beach postal employee to gather further intelligence on any suspicious mailings out of the Town of Palm Beach Post Office locations resembling the mailing previously sent by "Syntropy" to law enforcement on August 11, 2021. During the conversation, the postal employee advised that an unknown white male had previously deposited a large number of parcels at the 340 Royal Poinciana Way Post Office. He deposited the parcels roughly two to three times a week and the parcels had similar characteristics to the mailings previously sent by "Syntropy."

26.     On January 20, 2022, agents conducted surveillance at the USPS drop box located at 95 N County Road in the Town of Palm Beach where "Syntropy" was believed to be mailing parcels containing controlled substances. During the surveillance, a postal employee at the USPS store located at 340 Royal Poinciana Way advised USPIS agents that a large batch of parcels matching the description of the "Syntropy" parcel had recently been deposited into a drop box in the lobby. The postal employee also provided USPIS



*Figure 3*

with a photograph of the individual who deposited the parcels (see Figure 3). The photograph was taken between approximately 3:30 p.m. and 4:00 p.m. that same day.

27.     Later that day, USPIS agents met with a postal employee at the 340 Royal Poinciana Way location and the employee provided agents with forty-five (45) USPS priority and express parcels dropped off by the individual the employee had photographed. Among the parcels, agents

located Subject Parcel C from the undercover drug purchase conducted by the OCE. Subject Parcel C was addressed to the UC ADDRESS provided by the OCE.

28.     That same day, on January 20, 2022, an attempt was made to obtain camera footage from 340 Royal Poinciana Way to identify the vehicle used during the parcel drop off. Meanwhile, agents decided to leave the area and wait for the building manager to reach out and possibly provide information about the vehicle. Shortly thereafter, a clerk at the 340 Royal Poinciana Way Post Office revealed to agents that the subject may have been driving a van. The 340 Royal Poinciana Way building manager was unable to provide any camera footage.

29.     After leaving 340 Royal Poinciana Way, a USPSOIG agent decided to drive back to the Summit Boulevard Post Office in West Palm Beach and check the blue boxes (USPS boxes where mail is dropped off for delivery) in the event the subject dropped any additional parcels at that location. Upon his arrival at Summit Boulevard, he noticed a red van parked at the blue USPS drop box and noted that the driver was placing several parcels into the blue box. The agent drove by the van and observed that the driver fit the exact description as the photograph of the subject who had just dropped off the large batch of parcels at the Palm Beach Post Office. The agent watched as the subject drove away from the blue box and pulled into a parking space in front of the Post Office. The subject went inside carrying a white bin containing addition parcels. The agent watched as the subject walked into the lobby of the post office and placed additional parcels inside the lobby mailbox.

30.     At approximately 6:00 p.m., the USPSOIG agent observed the Florida license plate on the red van (hereinafter TARGET VEHICLE) (see Figure 4). The agent conducted a search of the Florida Department of Highway Safety and Motor Vehicles database. The van bearing Florida tag 45AAXG is registered to Kevin Christian FUSCO. The driver's license photo in the database matched the description of the individual observed by the USPSOIG agent at the Summit Boulevard Post Office and the photograph taken earlier at the Palm Beach Post Office location.



*Figure 4*

31.     After FUSCO left the Summit Boulevard Post Office, the agent followed the TARGET VEHICLE until reaching the Palm Beach Lakes Blvd exit off I-95. Fusco continued eastbound on Palm Beach Lakes Boulevard. The agent terminated his surveillance at that time.

32.     The USPSOIG agent then returned to the Summit Boulevard Post Office to determine how many parcels were mailed by FUSCO. When he arrived at the Post Office, the clerk was getting ready to empty both the outside and inside boxes. The agent assisted the clerk in locating the parcels and took pictures of 42 parcels located in the two boxes.

33.     A later inspection of License Plate Reader (LPR) cameras on the Flagler Bridge revealed that a red van bearing Florida license plate 45AAXG (TARGET VEHICLE) crossed the bridge in the eastbound direction at approximately 3:25 p.m., which agents believe corresponds with FUSCO's arrival at the Post Office located at 340 Royal Poinciana Way, Palm Beach, where he was photographed during the mailing of 45 parcels. LPR cameras also revealed that at approximately 4:24 p.m. the TARGET VEHICLE crossed westbound on the Lake Worth Bridge,

leaving the Town of Palm Beach. Agents believe that FUSCO's exit off the Town of Palm Beach also corresponds with his arrival at the Summit Boulevard Post Office where he mailed 42 parcels.

34.     On January 21, 2022, agents opened Subject Parcel C shipped to the OCE at the UC Address. The contents of the parcel were field tested and determined to be approximately 8.6 grams of crystal methamphetamine (see Figure 5).



Figure 5

### I.  Subject Parcel D

35.     On January 31, 2022, an authorized tracking warrant for the TARGET VEHICLE was obtained from the United States District Court for the Southern District of Florida.

36.     On February 1, 2022, the FBI OCE conducted a 28-gram crystal methamphetamine buy from username "Syntropy" via the Dark0de marketplace.

37.     On February 3, 2022, FUSCO parked the TARGET VEHICLE on Evernia Street in West Palm Beach. FUSCO walked across Evernia Street towards the apartment complex at 410 Evernia Street (later determined to be the location of the TARGET RESIDENCE). He was observed at the entrance of the building and then was no longer in sight when agents drove back into the area where they could view the front of the building.  A tracker was then installed on the TARGET VEHICLE.

38.     Later the same day, FUSCO was observed traveling in the TARGET VEHICLE from the building containing the business named "mailbox wpb" located at 5725 Corporate Way, Suite 206, West Palm Beach, Florida, (hereinafter "TARGET BUSINESS"), to the Town of Palm Beach with mail bins visible in the passenger seat of the TARGET VEHICLE. Agents monitored FUSCO as he drove directly to Post Office located within the Royal Poinciana Plaza on Palm Beach

Island. At this location, FUSCO dropped off forty (40) parcels in the mail stream. All 40 of these parcels had the same return address of Amy Taylor 516 S Dixie Hwy, West Palm Beach, FL 33401.

39.     On February 4, 2022, USPSOIG and USPIS agents retrieved a parcel addressed to the UC ADDRESS provided by the OCE for the 28-gram crystal methamphetamine order from "Syntropy," (hereinafter "Subject Parcel D"). The return address on Subject Parcel D was Amy Taylor 516 S Dixie Hwy, West Palm Beach, FL 33401. Agents opened Subject Parcel D and found it contained approximately 48.6 grams of a white crystal substance (see Figure 6). The substance was field tested and tested positive for crystal methamphetamine.



Figure 6

40.     The same day, February 4, 2022, tracker information revealed the TARGET VEHICLE was traveling to the Summit Boulevard Post Office. USPSOIG and USPIS agents observed FUSCO exit the TARGET VEHICLE carrying a brown box. FUSCO entered the USPS facility and was viewed removing numerous USPS priority mail and USPS priority mail express parcels from inside the brown box as he stood at a stand-alone USPS blue bin. FUSCO was viewed placing USPS priority mail express parcels inside of the blue bin and using a separate blue bin to mail the remaining USPS priority mail parcels. FUSCO was then viewed carrying the brown box out of the USPS facility, entering the TARGET VEHICLE with the brown box, and driving away in the TARGET VEHICLE. A USPIS Task Force Officer immediately checked both blue bins inside the USPS facility that FUSCO used. The officer was able to recover twenty-one (21) USPS priority mail express parcels and ten (10) USPS priority parcels. All parcels had a return label addressed to Amy Taylor, 516 S. Dixie Hwy., West Palm Beach, FL, 33401, the same return information that was on Subject Parcel D.  Surveillance video and photographs were taken during this event**.**

14

**J. Subject Parcel E**

41.     On February 9, 2022, the FBI OCE conducted a 56-gram crystal methamphetamine buy from username "Syntropy" via the Dark0de marketplace.

42.     The same day, February 9, 2022, agents conducted surveillance of FUSCO. FUSCO

 

was parked at the Holiday Inn located on Belvedere Road in West Palm Beach,

*Figure 8*

*Figure 7*

Florida. During the time the TARGET VEHICLE was parked at the Holiday Inn, "Syntropy" viewed the online order placed by the OCE. Agents monitored FUSCO most of this day. FUSCO left the hotel at approximately 3:30pm carrying a laptop case and a duffle bag (see Figure 7) and went directly to the TARGET BUSINESS. FUSCO was at this location for approximately an hour and half before loading two brown boxes in the passenger seat of the TARGET VEHICLE and departing (see Figure 8).   FUSCO headed south to the Post Office located at 3200 Summit Blvd, West Palm Beach, FL 33416.   FUSCO arrived at the post office at approximately 5:30 pm.   USPIS and USPS agents who were at the post office observed FUSCO dropping a parcel at the blue bin outside. FUSCO then parked in the customer lot and exited the

TARGET VEHICLE, carrying the same boxes he loaded at his place of business (see Figure 9). FUSCO carried the boxes containing parcels into the post office and placed them in the mailbox. FUSCO dropped a total of thirty-three (33) parcels that had the return address of Amy Taylor, 516 S Dixie Hwy, West Palm Beach, FL 33401.  In the group of 33 parcels was a parcel that the FBI OCE purchased from "Syntropy" using a dark web account (hereinafter "Subject Parcel E"). Surveillance video and photographs were taken during this event.

43.     Agents opened Subject Parcel E and found it contained approximately 65.6 grams of a white crystal substance (see Figure 10 and 11). The substance



*Figure 10*

was field tested and tested positive for crystal methamphetamine.

*Figure 11*

### K.     TARGET BUSINESS and RESIDENCE

44. FUSCO is currently on federal supervised release. He was previously convicted and sentenced to thirty-six (36) months in the custody of the Bureau of Prisons, followed by three (3) years of supervised release, for conspiracy to distribute a detectable amount of MDMA, in violation of 21 U.S.C. § 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956 (h). FUSCO commenced his term of supervised release in the Southern District of Florida on December 13, 2019 (17-CR-20275-UNGARO). Agents contacted his probation officer on February 9, 2022, and the probation officer notified agents that FUSCO's residential address is 410 Evernia St., Unit 818, West Palm Beach, FL 33401.

*Figure 9*

45.     On or about February 9, 2022, a USPSOIG agent reviewed a list of parcels being shipped to the TARGET BUSINESS building and the TARGET RESIDENCE building. Upon review of the data, it was discovered that from on or about November 12, 2021, to February 9, 2022, FUSCO received a total of seven (7) parcels at the two locations. Six (6) of the parcels were from a company called QQ-Studio.com. One (1) parcel from QQ Studio went to "KEVIN" at 410 Evernia St., Apt 818, West Palm Beach, FL 33401 (TARGET RESIDENCE). Five (5) of the parcels from QQ Studio went to the TARGET BUSINESS. A review of the company' website revealed that QQ Studio is a business specializing in the sale of small plastic mylar type baggies, the same type of baggies used to package the drugs received from "Syntropy." One (1) of the parcels that went to the TARGET BUSINESS was from an Ebay store called Flipify that specializes in smell proof resealable zip lock bags and other plastic bags. Your affiant believes, based on training and experience, that these bags are used to evade law enforcement detection of illicit drugs.

**L. Subject Parcel F mailed to TARGET BUSINESS**

46.     On February 11, 2022, a USPS agent intercepted a parcel (hereinafter Subject Parcel F), tracking number 9405536895232950623673, going to the TARGET BUSINESS addressed to the business MAILBOX WPB located at 5725 Corporate Way, Ste. 206, West Palm Beach, FL 33407.

47.     On this same date, the agent contacted a Palm Beach Sheriff's Office K-9 Deputy to have a trained K-9 sniff Subject Parcel F for any indication of narcotics.  The Deputy's K-9 had a positive hit on Subject Parcel F.  A search warrant was authorized for the search of the parcel.

48.     Upon opening Subject Parcel F, agents determined that it contained two (2) jars marked "Kuza Hemp" (see figure 12). These jars contained a total of 1884.2 grams of brown substance which tested



*Figure 12*

positive for MDMA.

49.     On February 22, 2022, a call was placed to USPS customer service regarding Parcel F. The caller identified himself as "Kevin." Kevin was inquiring regarding the tracking number ending in 3673. Kevin stated the destination address was 5725 Corporate Way, Suite 206, West Palm Beach, Florida 33407. He said he was "looking at the tracking" and it's showing the package was coming "here" and went back to New York and is now coming "here." Kevin said he had never seen anything like that before. Kevin was advised by the customer service representative that the package would be going back to the sender. Kevin asked if there was any way the package could be re-routed so it can come back here. The customer service representative advised the package could not be re-routed once it went back to the sender. The customer service representententative said the case inquiring about the package had been opened up by someone else, "West Palm Beach." Kevin stated he opened up the case in the business name West Palm Mailbox.

**N.  Parcels Mailed March 1, 2022 – Stuart, Florida**

50.     Vehicle tracking data showed that on March 1, 2022, at approximately 7:05 a.m., FUSCO left his residence at 410 Evernia Street in West Palm Beach. After making two brief stops in Palm Beach County, he drove to Martin County. At approximately 11:18 a.m., FUSCO's vehicle entered the parking lot of the USPS store located at 801 SE Johnson Avenue, Stuart, FL, 34994. At approximately 11:23 a.m., FUSCO's vehicle exited the USPS parking lot traveling westbound on SE Kindred Street.

51.     At approximately 1:00 p.m., USPIS TFO Henry Ramos arrived at the USPS store located at 801 SE Johnson Avenue, Stuart, FL, 34994. While accessing USPS databases, TFO Ramos was able to view video footage of the inside lobby of the USPS store. TFO Ramos searched the video for the same time when the vehicle tracker showed FUSCO's vehicle was parked in the

USPS parking lot and TFO Ramos was able to view FUSCO enter the front door of the USPS store carrying SUBJECT BOX #1 and SUBJECT BOX #2, both appearing to have open lids. After a brief period, FUSCO left SUBJECT BOX #1 and SUBJECT BOX #2 directly next to the blue USPS collection bins. At approximately 11:21 a.m., FUSCO exited the USPS store with nothing in his hands.

52.     TFO Ramos was able to speak with a USPS supervisor and locate SUBJECT BOX #1 and SUBJECT BOX #2, which were in the processing portion of the store behind the blue collection bins (see Figure 13). The boxes were not labeled for shipping and appear to have been used to merely carry the large quantity of envelopes into the store. TFO Ramos was clearly able to see inside of SUBJECT BOX #1 and SUBJECT BOX #2 and view numerous USPS flat rate envelops that appeared to be consistent with the same type of Easypost labels FUSCO previously used to mail narcotics. Below is an image of the boxes.



*Figure 13*

53.     On the same day, SUBJECT BOX #1 and SUBJECT BOX #2 were individually

placed in an open-air setting among similar sized boxes lined up on the floor at a USPS facility located at 3200 Summit Boulevard, West Palm Beach, FL, 33406. Both boxes were examined by a narcotics-trained canine named "Wall-E," who alerted to SUBJECT BOX #1 and SUBJECT BOX #2 for the presence of narcotics.

54.     A search warrant for SUBJECT BOX #1 and SUBJECT BOX #2 was obtained on March 2, 2022, from the United States District Court for the Southern District of Florida. The boxes contained fifty-four (54) parcels which were opened and searched.  The search yielded 46.6 grams of crystal methamphetamine, some of which was tested and tested positive for methamphetamine, 48.6 grams of white and brown Fentanyl, some of which was tested and tested positive for Fentanyl, 4.8 grams of Ketamine, some of which was tested and tested positive for Ketamine, 38.2 grams of MDA (methylenedioxyamphetmine, a schedule 1 controlled substance) which was tested and tested positive for MDA, 4.4 grams of black tar Heroin, some of which was tested and tested positive for Heroin, 94 grams of M-30 pills (a suspected mixture of Fentanyl and Codine), some of which was tested and tested positive for Codine (the Fentanyl test was inconclusive, but based on my training and experience, these pills are often laced with Fentanyl) and 17.6 grams of Ecstasy, some of which was tested and tested positive for Ecstasy.

**O.     Parcels Mailed March 2, 2022 – Port St. Lucie, Florida**

55.     Vehicle tracking data shows that on March 2, 2022, at approximately 7:05 a.m., FUSCO left 410 Evernia Street in West Palm Beach, made one stop in Palm Beach, and drove to Port St. Lucie, Florida. At approximately 11:33 a.m., FUSCO's vehicle entered the parking lot of the USPS store located at 2255 SE Veterans Memorial Parkway, Port Saint Lucie, FL, 34952. At approximately 11:44 a.m., FUSCO's vehicle exited the USPS parking lot traveling sound bound on SE Veterans Memorial Parkway.

56.     While FUSCO was depositing an abundance of USPS priority/express envelopes into several bins, USPIS TFO Henry Ramos arrived at the USPS store located at 2255 SE Veterans Memorial Parkway, Port Saint Lucie, FL, 34952. While conducting surveillance in the parking lot of the USPS store, TFO Ramos was able to view FUSCO carrying a brown box filled with an unknown number of USPS priority flat rate envelopes and depositing them into several USPS mailing blue bins located inside and outside of the USPS store. After a brief period of watching FUSCO deposit parcels, TFO Ramos viewed him walking away from the USPS store carrying the brown box.

57.     Following FUSCO's exit from the USPS parking lot, TFO Ramos immediately met with an employee at the USPS store. A total of nineteen (19) 9.5" x 12.5" USPS priority flat rate envelopes were recovered (see Figure 14). One (1) of the envelopes had a return address of "Michael Sanders, 4371 Northlake Blvd., Palm Beach Gardens, FL, 33410." Eighteen (18) of the envelopes had a return address of "Amy Smith, 12717 W. Sunrise BLVD, Sunrise, FL, 33323." The parcels appeared to be consistent with the previous mailings of FUSCO based on the method of packaging and the use of prepaid labels with generic names and alias return addresses.



*Figure 14*

58.     On the same day, the SUBJECT PARCELS were examined by a narcotics-trained canine named "Wall-E," who alerted to each of the SUBJECT PARCELS listed in Attachment A for the presence of narcotics. Palm Beach County Sheriff's Office (PBSO) Deputy Cesar Tejada and "Wall-E" have trained and worked as a team for approximately three years. "Wall-E" has successfully completed 420 hours of Narcotics Detection Courses, and "Wall-E" is certified in the detection of cocaine, heroin, methamphetamine and ecstasy as well as derivatives. "Wall-E" is certified on a yearly basis.

59.     A search warrant for SUBJECT PARCELS out of Port St. Lucie was obtained on March 4, 2022, from the United States District Court for the Southern District of Florida. The nineteen (19) parcels were opened and searched.  The search yielded 8.8 grams of Fentanyl, some of which was tested and tested positive for Fentanyl, and 139.8 grams of MDA, some of which was tested and tested positive for MDA.

**P. Parcels Mailed March 2, 2022 – Jensen Beach**

60.     Vehicle tracking data shows that on March 2, 2022, at approximately 7:05 a.m., FUSCO left 410 Evernia Street in West Palm Beach and made several stops in Martin County, to include a USPS store in Port St. Lucie. At approximately 1:25 p.m., FUSCO's vehicle entered the parking lot of the USPS store located at 2301 NE Savannah Road, Jensen Beach, FL, 34957. At approximately 1:45 p.m., FUSCO's vehicle exited the USPS parking lot traveling northbound on NE Savannah Road.

61.     While FUSCO was depositing an abundance of USPS priority/express envelopes into several bins, S.A. A. Reyes (DEA) arrived at the USPS store located at 2301 NE Savannah Road, Jensen Beach, FL, 34957. While conducting surveillance in the parking lot of the USPS store, S.A. A Reyes was able to view FUSCO making several trips from his vehicle carrying a brown box

filled with an unknown number of USPS priority flat rate envelopes and depositing them into several USPS mailing blue bins located inside of the USPS store. After a brief period, S.A. A. Reyes viewed FUSCO exiting the USPS store carrying an empty brown box.

62.     After FUSCO exited from the USPS parking lot, S.A. A. Reyes immediately met with an employee at the USPS store. A total of sixty-four (64) 9.5" x 12.5" USPS priority flat rate envelopes were recovered with a return address of "Michael Sanders, 4371 Northlake Blvd., Palm Beach Gardens, FL, 33410" (see figure 15). The parcels appeared to be consistent with the previous mailings of FUSCO based on the method of packaging and the use of prepaid labels with generic names and alias return addresses.



Figure 15

63.     On the same day, the SUBJECT PARCELS were individually placed in an open-air setting among similar sized parcels lined up on the floor at a USPS facility located at 3200 Summit Boulevard, West Palm Beach, FL, 33406. The SUBJECT PARCELS were examined by a narcotics-trained canine named "Wall-E," who alerted to each of the SUBJECT PARCELS for the presence of narcotics.

64.     A search warrant for SUBJECT PARCELS out of Jensen Beach was obtained on

March 4, 2022, from the United States District Court for the Southern District of Florida. The sixty-nine (69) parcels were opened and searched. The search yielded 60.4 grams of crystal methamphetamine, some of which was tested and tested positive for methamphetamine, 111 grams of powder Fentanyl, some of which was tested and tested positive for Fentanyl, 1.8 grams of MDA, some of which was tested and tested positive for MDA, 7.6 grams of black tar Heroin, some of which was tested and tested positive for Heroin, 115.8 grams of M-30 pills (a suspected mixture of Fentanyl and Codine), and 20.6 grams of Ecstasy, some of which was tested and tested positive for Ecstasy.

Based on the facts outlined above, your affiant believes there is a probable cause to charge Kevin FUSCO with conspiracy to distribute 50 grams of more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(A)(viii), conspiracy to distribute 40 grams of more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(B)(vi), and possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
ARTURO CALDERON
Special Agent, FBI

Sworn to me via Telephone-FaceTime by the
affiant in accordance with the requirements of
Fed. R. Crim. P 4.1 on this ___ day of March 2022.

_____
HON. RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. _____

<u>**PENALTY SHEET**</u>

**Defendant's Name: KEVIN C. FUSCO**

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
| 1 | Conspiracy to possess with intent to distribute 50 grams or more of methamphetamine | 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(A)(viii) | Up to life imprisonment; Minimum of 10 years' imprisonment; Up to $10,000,000 fine; Supervised release of at least 5 years and up to life; $100 Special Assessment |
| 2 | Conspiracy to possess with intent to distribute 40 grams or more of fentanyl | 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(B)(vi) | Up to 40 year imprisonment; Minimum of 5 years' imprisonment; Up to $5,000,000 fine; Supervised release of at least 4 years and up to life; $100 Special Assessment |
| 3 | Possession with intent to distribute 50 grams or more of methamphetamine | 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A)(viii) | Up to life imprisonment; Minimum of 10 years' imprisonment; Up to $10,000,000 fine; Supervised release of at least 5 years and up to life; $100 Special Assessment |