UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80056-CR-ROSENBERG

UNITED STATES OF AMERICA

v.

KEVIN CHRISTIAN FUSCO,

    Defendant.

## PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States of America (the "United States") for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Kevin Christian Fusco (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On April 21, 2022, the United States filed a one-count Information charging the Defendant with conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and § 841(a)(1). Information, ECF No. 15. The Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 21 U.S.C. §§ 846 and/or 841, the Defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to commit or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 832(a). *See id.* at 2.

On July 22, 2022, the Court adopted the report and recommendation issued by Magistrate Judge Bruce E. Reinhart and accepted the Defendant's guilty plea to single count of the Information. *See* Minute Entry, ECF No. 29; Report and Recommendations, ECF No. 31;

Paperless Order, ECF No. 32; Plea Agreement/Factual Proffer ¶ 1, ECF No. 30, at 1–6.[1] As part of the guilty plea, the Defendant agreed to the forfeiture of Bitcoin and Ethereum cryptocurrency. Specifically, among other provisions in the Plea Agreement, the Defendant agreed to the following:

> 12. The Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a violation of 21 U.S.C. §§ 841 or 846, and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 853. The property subject to forfeiture includes, but is not limited to directly forfeitable property, which includes, but is not limited to:
>
> a. approximately 0.1075 Bitcoin cryptocurrency, seized on or about March 10, 2022; and
>
> b. approximately 1.324 Ethereum cryptocurrency, seized on or about March 10, 2022.

Plea Agreement/Factual Proffer ¶ 12, at 5.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Plea Agreement/Factual Proffer, at 7–14. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 8.

As the Defendant agreed in his Factual Proffer, the Defendant was arrested during a federal investigation of the distribution of controlled substances from dark web marketplace websites. Plea Agreement/Factual Proffer, at 8. The marketplaces are designed to promote the anonymous sale of illegal items, such as narcotics, in exchange for Bitcoin and other cryptocurrencies. *Id.* The marketplaces use dark-web technology to hide the identity of the marketplace host, vendors,

---

[1] The Plea Agreement and Factual Proffer were filed as a single document at ECF No. 30. For citation purposes, page numbers referenced to this filing are the page numbers automatically generated by ECF and PACER.

and purchasers of narcotics. *Id.* The marketplaces are accessible to anyone who knows how to search the dark web. *Id.* The dark web marketplaces are made up of vendor profiles akin to the profiles or "shops" seen on websites such as Ebay.com and Etsy.com. *Id.* Each vendor profile markets a different selection of narcotics. *Id.* Vendors typically list the type, quantity, and price of each controlled substance. *Id.* After the purchases are made through the web site using cryptocurrency, the vendor mails the purchaser a parcel containing the controlled substances. In this case, parcels were sent through the United States Postal Service. *Id.*

The investigation of the Defendant revealed that from in or around December 2021 to March 10, 2022, the Defendant entered into an agreement with A.P to mail parcels containing controlled substances for the Syntropy dark web vendor profile. A.P paid the Defendant $2,500 per week to package and mail the parcels. *Id.* at 8–9. The Defendant and A.P. conspired to distribute multiple types of controlled substances. *Id.* Lab testing had confirmed that some of the drugs were methamphetamine, fentanyl, heroin, and MDA. *Id.* A.P. managed the Syntropy vendor profile on various dark web marketplaces; he advertised and conducted the on-line transactions. *Id.* After controlled substances were purchased through the Syntropy profile, the Defendant worked with A.P. to package and mail the controlled substances to customers. *Id.* During the investigation, agents obtained a tracking warrant for the Defendant's car, followed him to post office locations, and seized over 200 parcels containing narcotics that he had attempted to place in the mail stream. *Id.* Agents later obtained a warrant to search the Defendant's business address and located approximately 1400 packages containing controlled substances, mailing supplies and paraphernalia used to package and distribute controlled substances. *Id.*

Beginning in the summer of 2021, agents began making online undercover purchases from the "Syntropy" vendor profile on multiple dark-web marketplaces. *Id.* The purchases resulted in

the delivery of narcotics to undercover locations. *Id.* Some of the purchases from Syntropy were conducted on January 18, 2022 (8.6 grams methamphetamine received on January 20, 2022), February 1, 2022 (48.6 grams methamphetamine recovered on February 4, 2022), and February 9, 2022 (65.6 grams methamphetamine recovered on February 9, 2022). *Id.* Each of the controlled substances purchased from Syntropy field tested positive for the type of controlled substance purchased. *Id.* Each of the narcotics purchases also appeared to be the type of controlled substance purchased based on the training and experience of the agents conducting the investigation. *Id.*

On January 20, 2022, agents identified the Defendant as a mailer of parcels containing controlled substances purchased from Syntropy on the dark web. *Id.* On January 18, 2022, an FBI Online Covert Employee (OCE) purchased seven (7) grams of crystal methamphetamine from Syntropy on a dark web marketplace Dark0de to be shipped to a specific undercover address. On January 19, 2022, Syntropy accepted the order. *Id.* at 10. On January 20, 2022, a postal employee at the USPS store located at 340 Royal Poinciana Way advised USPIS agents that a large batch of parcels matching the description of the Syntropy parcels had recently been deposited into a drop box in the lobby. *Id.* The postal employee provided USPIS with a photograph of the Defendant in the process of depositing the parcels. *Id.* Among the parcels mailed by the Defendant, agents located the parcel from the undercover drug purchase conducted by the OCE January 18, 2022. *Id.* Agents later opened the parcel and discovered what field tested to be approximately 8.6 grams of crystal methamphetamine. *Id.*

On January 31, 2022, agents obtained a tracking warrant and began tracking Defendant's movements using a GPS tracker attached to his van. *Id.* On February 3, 2022, the Defendant was observed driving in his van from the office building containing the business named "mailbox wpb" located on Corporate Way in West Palm Beach, Florida. *Id.* The Defendant traveled to the post

office located within the Royal Poinciana Plaza in the Town of Palm Beach. *Id.* The Defendant was observed depositing forty parcels that appeared like other parcels sent by Syntropy. *Id.*

On February 1, 2022, the OCE conducted a 28-gram crystal methamphetamine buy from username "Syntropy" via the Dark0de marketplace. *Id.* On February 4, 2022, agents retrieved a parcel addressed to the undercover address. *Id.* Agents opened the parcel and found it contained approximately 48.6 grams of a white crystal substance that later tested positive for methamphetamine. *Id.*

On February 9, 2022, the OCE conducted a 56-gram crystal methamphetamine buy from username "Syntropy" via the Dark0de marketplace. *Id.* The same day, February 9, 2022, agents conducted surveillance of the Defendant. *Id.* They observed the Defendant located at the Corporate Way business address for approximately an hour and a half before he went to the Post Office located at 3200 Summit Blvd in West Palm Beach. *Id.* The Defendant dropped off a total of 33 parcels with similar labeling. Located within the group of 33 parcels was a parcel that the OCE purchased from "Syntropy" earlier in the day. *Id.* at 10–11. Agents opened the parcel and found it contained approximately 65.6 grams of a white crystal substance that field tested positive and appeared to be crystal methamphetamine. *Id.*

On February 11, 2022, agents intercepted a parcel going to the Defendant's Corporate Way business address in West Palm Beach. *Id.* On the same date, agents obtained a search warrant to open the parcel after a positive dog sniff. *Id.* Agents determined that the parcel contained two (2) jars marked "Kuza Hemp." *Id.* The jars contained a total of 1884.2 grams of brown substance which field tested positive for MDMA. *Id.* On February 22, 2022, a call was placed to USPS customer service regarding the parcel. *Id.* The caller identified himself as "Kevin." *Id.* The Defendant was inquiring about a parcel with a tracking number ending in 3673. *Id.* The Defendant

stated that the destination address was the Corporate Way business address in West Palm Beach. During the conversation, he discussed how he had been monitoring the postal service tracking of the package. *Id.*

Vehicle tracking data showed that on March 1, 2022, the Defendant drove from his personal residence to the USPS store located at 801 SE Johnson Avenue, Stuart, FL, 34994. *Id.* Based on video from inside the lobby of the USPS store, an agent was able to see the Defendant enter the front door carrying two boxes that were later opened pursuant to a search warrant. *Id.* The boxes contained a total of 54 parcels which contained controlled substances, including methamphetamine, fentanyl and heroin. *Id.* The parcels appeared to be consistent with other Syntropy mailings. *Id.*

Vehicle tracking data showed that on March 2, 2022, the Defendant drove to the USPS store located at 2255 SE Veterans Memorial Parkway, Port Saint Lucie, FL, 34952. *Id.* An agent was able to view the Defendant depositing parcels inside and outside of the USPS store. *Id.* The agent recovered a total of 19 parcels which were opened and searched pursuant to a search warrant. *Id.* The parcels appeared to be consistent with the previous mailings of Syntropy. *Id.* Among other controlled substances, agents located substances that field tested positive for fentanyl. *Id.*

Vehicle tracking data showed that on March 2, 2022, the Defendant drove to a USPS store located at 2301 NE Savannah Road, Jensen Beach, FL, 34957. *Id.* at 12. An agent was able to view the Defendant making several trips from his vehicle carrying a brown box filled with USPS priority flat rate envelopes and depositing them into several USPS mailing blue bins located inside of the USPS store. *Id.* After the Defendant left, the agent immediately met with an employee at the USPS store and recovered 64 parcels. *Id.* The parcels appeared to be consistent with the previous mailings of Syntropy. *Id.* The parcels were searched pursuant to a search warrant and

agents located, among other controlled substances, methamphetamine, fentanyl, and heroin.  *Id.*

Vehicle tracking data showed that on March 3, 2022, the Defendant left his residence and went to the USPS store located at 720 Lucerne Avenue, Lake Worth, FL, 33460.  *Id.*  The next day, based on the historical tracking data, the investigating agent contacted a supervisor assigned to the USPS store located in Lake Worth and requested that he check the outside USPS collection blue bin which, according to GPS tracking data, was the closest area to where the Defendant parked his vehicle.  *Id.*  The supervisor was able to find eight parcels that showed the same return address Syntropy previously used for mailings.  *Id.*  The parcels were opened pursuant to a search warrant and contained methamphetamine and fentanyl.  *Id.*

Vehicle tracking data showed that on March 4, 2022, the Defendant drove from the business address at Corporate Way in West Palm Beach to the USPS store located at 21 NW First Avenue, Dania, Florida, 33004.  *Id.*  The parcels appeared to be consistent with prior Syntropy mailings. Agents responded to the store and recover a total of 19 parcels which were later opened pursuant to a search warrant. Agents discovered that the parcels contained fentanyl.  *Id.*

Vehicle tracking data showed that on March 8, 2022, the Defendant left his residence and drove to a USPS store located at 2305 Minton Road, Melbourne, FL, 32904.  *Id.*  Agents recovered 30 parcels that were consistent with prior Syntropy mailings.  *Id.*  The parcels were opened pursuant to a search warrant and agents were able to recover an undercover purchase made by an OCE from Syntropy.  *Id.* at 13.  Including the undercover purchase, the parcels contained fentanyl and methamphetamine.  *Id.*

Vehicle tracking data showed that on March 9, 2022, the Defendant drove from his residence to a USPS store located at 155 Goolsby Boulevard, Deerfield Beach, FL, 33442.  *Id.* After the Defendant exited from the USPS parking lot, an investigating agent contacted an

employee at the USPS store. *Id.* The employee recovered a total of 14 parcels that appeared to be consistent with the previous mailings of Syntropy. *Id.* The parcels were opened pursuant to a federal search warrant and contained fentanyl in addition to another controlled substance. *Id.*

On March 10, 2022, agents arrested Defendant near his residence and recovered a large quantity of various types of suspected narcotics at his workplace within the Defendant's business at Corporate Way in West Palm Beach. *Id.* The narcotics were packaged in small quantities and organized in bins and cabinets near various USPS shipping materials. *Id.* The narcotics were prepackaged in mylar bags and separated out in various bins with other mylar bags of similar apparent weights. *Id.* The packaging in the office was consistent with the packages received by law enforcement from online undercover purchases from Syntropy. *Id.* The packaging was consistent with the packaging found in the parcels mailed by the Defendant. *Id.* Approximately fourteen hundred (1400) small quantity baggies containing narcotics were located. *Id.* From the same room, agents also recovered scales, drug paraphernalia and a painter's mask believed to be used to protect respiration while the user handled powder narcotics. *Id.* Surveillance recovered from the business showed the Defendant entering and exiting. Surveillance also showed A.P. at the business on multiple occasions. *Id.* The business location was maintained as a place to store, package, and distribute the controlled substances. *Id.*

The suspected narcotics all were shipped to the DEA Southeast Laboratory to be safely opened and tested in a laboratory environment. *Id.* The DEA lab is in the process of analyzing the controlled substances recovered in this case. *Id.* Based on the lab reports completed by the date of the plea, DEA lab reports show that drugs located at the Defendant's business are at least (a) 50 grams or more of methamphetamines, in violation of Title 21, United States Code, Section 841(b)(1)(A)(viii); (b) 400 grams or more of a mixture or substance containing a detectable amount

of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as "fentanyl," in violation of Title 21, United States Code, Section 841(b)(l)(A)(vi); and (c) a mixture or substance containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841 (b)(1)(C). *Id.* at 14.

On March 10, 2022, agents located cryptocurrency belonging to the Defendant which were proceeds from the distribution of controlled substances. *Id.* Agents located approximately 0.1075 Bitcoin cryptocurrency, and approximately 1.324 Ethereum cryptocurrency. *Id.*

Based on the record in this case, the following specific property is directly subject to forfeiture, pursuant to 21 U.S.C. § 853(a):

    i.    approximately 0.1075 Bitcoin cryptocurrency, seized on or about March 10, 2022; and
    ii.    approximately 1.324 Ethereum cryptocurrency, seized on or about March 10, 2022

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1. Pursuant to 21 U.S.C. § 853(a), the following specific property is hereby forfeited and vested in the United States of America:

    i.    approximately 0.1075 Bitcoin cryptocurrency, seized on or about March 10, 2022; and
    ii.    approximately 1.324 Ethereum cryptocurrency, seized on or about March 10, 2022

2. Any duly authorized law enforcement agency may seize and take possession of the forfeited property according to law.

3. The United States shall send and publish notice of the forfeiture in accordance with Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n).

4.   The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

5.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

6.   The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

It is further **ORDERED** that upon adjudication of all third-party interests, if any, the Court will enter a final order of forfeiture as to the property in which all interests will be addressed. Upon notice from the United States that no claims have been filed within 60 days of the first day of publication or within 30 days of receipt of notice, whichever is earlier, then, pursuant to Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(7), this Order shall become a Final Order of Forfeiture and any duly authorized law enforcement agency shall dispose of the property in accordance with applicable law.

**DONE AND ORDERED** in Miami, Florida, this __22nd__ day of August 2022.

_____
HON. ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE