UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  22-CR-80056-ROSENBERG

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

KEVIN CHRISTIAN FUSCO,

     Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

     The defendant, Kevin Christian Fusco, through counsel, hereby files this this Sentencing Memorandum, and in support thereof, states:

## GENERAL SENTENCING PRINCIPLES

     While the advisory "[g]uidelines should be the starting point and the initial benchmark," they are "not the only consideration." *Gall v. United States*, 552 U.S. 38, 49 (2007). So while this Court must begin by calculating the applicable advisory Guidelines range, it also has broad discretion to impose a sentence far below that range. *See id.* at 49-51; *see also generally United States v. Booker*, 543 U.S. 220 (2005). It may sentence below the advisory Guidelines range either (a) because "the case at hand falls outside 'heartland' to which the [Sentencing] Commission intends individual guidelines to apply, U.S.S.G. § 5K2.0," i.e., a downward departure, or (b) because "the Guidelines sentence itself fails properly to reflect the § 3553(a) considerations," i.e., a variance. *Rita v. United States*, 551 U.S. 338, 351 (2007).

After considering the Guidelines, a sentencing court "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, she may not presume that the Guidelines range is reasonable. She must make an individualized assessment based on the factors presented." *Gall*, 552 U.S. at 49-50. This is based on the "federal judicial tradition" that a court "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Id.* at 52; see also *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006) (stating "a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence").

Section 3553(a) provides that, "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." That section requires the district court to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed rehabilitation; (3) the kinds of sentences available; (4) the Guidelines; (5) any policy statements; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide

restitution to any victims of the offense[1]. 18 U.S.C. § 3553(a).

## APPLICATION OF § 3553(a) FACTORS

### A. The History and Characteristics of the Defendant

Mr. Fusco is a 34-year old, father of a one year old son. (DE 43: 3&¶69). His significant other also has another minor daughter. (DE 43: ¶69). He never met his biological father, and he grew up with his mother, with whom he has had a strained relationship, and step-father. (DE 43: ¶64). His mother and step-father later divorced, but Mr. Fusco maintained contact with his step-father for another 9 years after their divorce. (DE 43: ¶64). As a teenager, Mr. Fusco sustained a skull fracture which required surgery to address the traumatic brain injury. (DE 43: ¶71). He also suffers from severe osteoarthritis. (DE 43: ¶72). He has struggled with his mental health, (DE 43: ¶73), and is amenable to treatment, as is recommended in his PSI. (DE 43: ¶118). He also struggles with substance abuse, (DE 43: ¶¶74-79), and is amenable to treatment. He has a significant history of employment, including working in or running a coffee shop, working as a Postmates currier, and working in editing, producing, and as a production assistant. (DE 43: ¶¶83-96).

### B. The Nature and Circumstances of the Offense

This is a non-violent, drug offense. In crafting a sentence, it is important to note what Mr. Fusco's offense conduct did not involve. Although the government's investigation into Syntropy began in July 2021, (DE 43: ¶10), Mr. Fusco did not

---

[1] This is a Title 21 offense; there are no victims in need of restitution. (*See* DE 43: ¶37).

become involved in the scheme until December 2021. (DE 43: ¶9). Mr. Fusco did not decide what controlled substances to sell or in what quantities to purchase them. He was not the source of supply of the narcotics involved in the case. He did not operate the dark web marketplace to advertise the narcotics for sale. He did not have a proprietary interest in the scheme, and he was instead paid to perform a certain task: mailing out packages. There are no allegations that he was ever armed during the scheme or in relation to the drug offense.

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment

Mr. Fusco acknowledges the seriousness of the offense, and he deeply regrets becoming involved in the scheme. A sentence below the guideline range advocated for by probation or the Government will be sufficient, but not greater than necessary to achieve the sentencing goals of § 3553(a) for this non-violent offense.

### D. The Need to Provide General and Specific Deterrence

This Court can adequately provide for general and specific deterrence without imposing a sentence in the guideline range recommended by probation. Mr. Fusco is facing a significant prison sentence which provides general deterrence. Furthermore, because this case represents Mr. Fusco's second controlled substance offense, if he were to commit another controlled substance offense after his release, even one single sale of a small amount of a controlled substance, would subject Mr. Fusco to sentencing under the career offender guideline, U.S.S.G. § 4B1.1. This guideline produces an enhanced offense level, as well as a criminal history category of VI, for

offenders with two prior controlled substance offenses. The applicability of this enhancement provides specific deterrence in this case.

### E. The Need to Provide the Defendant with Training, Medical Care, and Other Correctional Treatment

"[I]mprisonment is not an appropriate means of promoting correction and rehabilitation." § 3582(a). Thus, a court cannot increase a sentence to provide rehabilitation. *Tapia v. United States*, 564 U.S. 319 (2011). Mr. Fusco would benefit from both mental health treatment and substance abuse treatment, and he would benefit from receiving these services on supervised release.

### F. The Kinds of Sentences Available, the Advisory Guidelines Range, and Pertinent Policy Statements

The PSI recommends a guidelines range of 262 to 327 months, (DE 43: ¶105); however, based on Mr. Fusco's objections, this Court should calculate his range to be 97 to 121 months, (see DE 37). Mr. Fusco's guideline range is largely based on the amount, and the purity, of the methamphetamine, or "ice", that was located in the Corporate Way address. (DE 43: ¶¶32 & 41). These 1,577.3 grams of methamphetamine, (DE 43: ¶32), are equated to 31,546 kilograms of converted drug weight, based on a 1 gram to 20 kilogram conversion rate. *See* U.S.S.G. § 2D1.1, comment. n.8(D). A conversion rate of 1 gram of "ice", or methamphetamine of at least 80% purity, to 20 kilograms of converted drug weight results in harsher recommended sentences for "ice" than nearly all other controlled substances. This includes sentencing for methamphetamine of lower purity, fentanyl, heroin, cocaine base, and cocaine. These substances would compare as follows:

| CONTROLLED SUBSTANCE TYPE | CDW RATIO | CDW BASED ON 1,577.3 GRAMS | BASE OFFENSE LEVEL[2] | GUIDELINE RANGE[3] |
|---|---|---|---|---|
| "ICE" | 1 g ≈ 20 kg | 31,546 kg | 36 | 262-327 |
| METHAM-PHETAMINE | 1 g ≈ 2 kg | 7,886.5 kg | 32 | 168-210 |
| FENTANYL | 1 g ≈ 2.5 kg | 3,943.25 kg | 32 | 168-210 |
| HEROIN | 1 g ≈ 1 kg | 1,577.3 kg | 30 | 135-168 |
| COCAINE BASE/CRACK | 1 g ≈ 3,571 g | 5,632.5383 kg | 32 | 168-210 |
| COCAINE | 1 g ≈ 200 g | 315.35 kg | 24 | 63-78 |

Mr. Fusco's guideline range would have been significantly lower if the controlled substance located at the Corporate Way address was methamphetamine of lower purity, or even fentanyl, heroin, crack, or cocaine. These disparate guideline ranges do not reflect the relative culpability of offenders, especially in a case like this one where someone else other than Mr. Fusco determined what substances to sell online and how much supply to purchase for future sale. Imposing a guideline sentence in

---

[2] These base offense levels are reported based on the drug quantity table without an adjustment pursuant to mitigating role.

[3] These guideline ranges are based on probation's recommendations in the PSI: base offense level without an adjustment for mitigating role + 2 for mass marketing + 2 for maintaining a premises for manufacturing or distributing a controlled substance − 3 for acceptance of responsibility, and a criminal history category of III. (*See* DE 43: ¶¶ 42-51 & 105).

this case would produce an unwarranted sentencing disparity.

Ordinarily, the guidelines gain their authority from the Commission's ability to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough v. United States*, 552 U.S. 85, 108-109 (2007). However, in setting the base drug guidelines, the Commission "did not take account of 'empirical data and national experience'", and therefore, the Supreme Court has concluded that the drug guidelines do not deserve the same respect that should otherwise be afforded to the Guidelines in general. *Id*. at 109. "A growing number of district courts have declared a categorical policy disagreement with the purity-driven methamphetamine guidelines." *United States v. Bean*, 371 F. Supp. 3d 46, 50 (D.N.H. 2019) (collecting cases).

The court in *Bean* agreed with other courts that have rejected the 10-1 ratio between "ice" and methamphetamine of lower purity and "joined them by declaring a categorical policy disagreement with the methamphetamine guidelines for the following reasons:

> (1) there appears to be no empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher purity methamphetamine;
>
> (2) methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug-trafficking conspiracy; and
>
> (3) the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major drugs."

*Id*. at 51. Unlike other guidelines, the Sentencing Commission did not rely on

empirical evidence in setting the drug guidelines, and instead based the drug guidelines on Congress's mandatory minimums for drug offenses. *Id*. As such, this Court should not afford the drug guidelines the same level of deference it does to other guidelines.

Furthermore, "[t]he assumption underlying the methamphetamine guidelines—that purity indicates that a defendant is close to the source of drugs and therefore played a leadership role in the conspiracy—is divorced from current market reality." *Id*. at 52. This is certainly true in this case, where Mr. Fusco was not responsible for sourcing the drugs, and was lower down the chain of supply than others who role he is being held accountable for. However, it is true across the board in methamphetamine case, because the average methamphetamine is well above 80% pure. The Drug Enforcement Administration ("DEA") has reported average purity of methamphetamine seized in the United States in 2019 and 2020 to be more than 95% pure. Drug Enforcement Administration, 2020 National Drug Threat Assessment (March 2021), 19-20,[4] available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf (last visited November 1, 2022). Instead of the 10-1 ratio reflecting a close relationship with the international sources of methamphetamine, the greater 10-1 ratio applies in almost all methamphetamine cases. The exception has swallowed the rule due to the consistently high average purity of methamphetamine. Thus, the

---

[4] The page references to the DEA's report refer to the page number noted at the bottom of each page of the report.

purity of methamphetamine does not necessarily reflect a defendant's role in the distribution chain.

### G. The Need to Avoid Unwarranted Sentencing Disparities

As argued above, the 10-1 "ice" ratio applied in this case produces a recommended sentence that is not proportional to Mr. Fusco's conduct. This Court should align itself with other district courts that have declared a categorical policy disagreement with the "ice" guideline in order to prevent the guidelines from producing a sentence that is not proportional to Mr. Fusco's conduct.

* * *

Wherefore, the Defendant, Kevin Christian Fusco, respectfully files this Sentencing Memorandum.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By: *s/M. Caroline McCrae*
M. Caroline McCrae
Assistant Federal Public Defender
Attorney for Defendant
Florida Bar No. 72164
450 S Australian Avenue, Suite 500
West Palm Beach, Florida 33401
Phone:  (561) 833-6288
Email:  *caroline_mccrae@fd.org*

### CERTIFICATE OF SERVICE

I HEREBY certify that on November 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/M. Caroline McCrae*
M. Caroline McCrae
